## Bannerot *v.* Bannerot, Appellant.

*Fixtures—Trade fixtures—Real estate—Business conducted in trade name—Contest between personal representatives and heirs or devisees.*

1. The fact that a person who owns a building conducts a business therein under a trade name and keeps the books of the business under such name, does not affect his relation to the building and the machinery and fixtures contained in it, and when he dies, devising the property in question to his sons and wife, the ordinary rule as to what are or are not removable fixtures as between the personal representative and the heirs or devisees of the deceased applies.

2. The general rule as to fixtures is that when the owner of land in fee puts machinery and appliances upon it for the purpose of carrying on a business for which the building in which they are erected is adapted, and the whole constitutes a plant for the carrying on of a particular business, such articles are to be deemed part of the freehold, and to pass to the vendee, devisee or heir of the party annexing them.

Argued October 31, 1912. Appeal, No. 177, Oct. T., 1912, by defendants, from decree of C. P. Allegheny Co., April T., 1912, No. 2143, on bill in equity in case of Frederick G. Bannerot and Alexander B. Bannerot v. Margaret C. Bannerot and C. O. Lappe. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

SHAFER, J., filed the following opinion:

The bill is by the owners of a building, to restrain the defendants from removing therefrom certain fixtures and machinery, the dispute between the parties being as to whether this machinery is or is not a part of the building.

### FINDINGS OF FACT.

First. In the year 1901 Alexander A. Bannerot was conducting an oil and grease manufacturing plant on

Market street, Pittsburgh, and was the owner of a lot
on Beaver avenue, Allegheny. In that year he erected
a building on his Beaver avenue lot, called in the con-
tract for its construction a "ware house," which was
three stories in height and covered the whole lot, and
as originally constructed the floors and joists were
supported by wooden columns, beams and girders. His
intention in building it was to use it for his oil and
grease business.

Second. When the building was completed it had no
equipment for any business, except an elevator which
was put in place but had no power to operate it. Soon
after the completion of the building he removed his oil
and grease business from Market street to this build-
ing, installing in it a boiler, engine, shafting, and certain
large tanks and grease kettles, the installation of the
grease kettles requiring the removal of some of the
floors and the re-enforcement of the wooden columns
supporting the building. The fixtures, apparatus and
machinery so installed by him, and afterwards added
to from time to time, are fully described in the third
paragraph of the agreed statement of facts filed in the
case, showing the same in detail, all of this machinery,
etc., being necessary for conducting the business of
manufacturing lubricating oils and greases.

Third. Alexander A. Bannerot conducted this oil
business in this building until the time of his death in
August, 1908. He was at the same time interested in
other enterprises, being the owner of a farm, and of
mining stocks in the west. He carried on this oil busi-
ness under the name of the Marine Oil Co., he being,
however, the sole owner of the business. His two sons,
the plaintiffs herein, were employed by him and were
paid by percentage of the profits of the business. The
books of the business were kept under the name of the
Marine Oil Company, and in these books eighteen hun-
dred dollars was deducted for himself from the annual
profits, that being six per cent, on a valuation of thirty

thousand dollars placed by him on the Marine Oil Company, and twenty-four hundred dollars was also charged annually as rent, being eight per cent. on thirty thousand dollars, the value he placed on the land and building; and the payments due his sons and other profit-sharing employees were made after deducting these amounts. The books kept under the name of the Marine Oil Company showed the cost of the various articles of machinery and the tanks put in the building from time to time.

Fourth. Alexander A. Bannerot left a will, a copy of which is annexed to the agreed statement of facts above mentioned, by which he gave all the residue of his property, including the business of the Marine Oil Company and the building in which it was carried on, to his two sons, the plaintiffs, and his wife, Margaret C. Bannerot, one of the defendants. The will expressed his desire that the Marine Oil Company business should be continued and it was continued for some time after his death by the Fidelity Title & Trust Company, administrator, c. t. a.

Fifth. After certain negotiations between the parties as to a partition of the property and a settlement of the estate, on July 27th, 1911, the plaintiffs and Margaret C. Bannerot entered into an article of agreement, a copy of which is annexed to the statement of facts, by which Margaret C. Bannerot agreed to sell to the plaintiffs her one-third interest in the property on Beaver avenue, inter alia, in connection of their assigning to her all their interest in the personal estate of Alexander A. Bannerot, except certain stocks which were to be divided equally, and a lease to be made by the plaintiffs to Margaret C. Bannerot for the Beaver avenue property on certain terms. This agreement was carried out by the making of a deed and a lease and bills of sale, according to the agreement.

Sixth. Mrs. Bannerot went into possession of the Beaver avenue property and carried on the oil business

there under the name of the Marine Oil Company in the same manner as it had been carried on before, and was carrying on the business there at the time of the filing of the bill in this case, but had given notice to the plaintiffs of her intention to terminate such tenancy on March 1st, 1912, which she had a right to do under the terms of the lease.

Seventh. Mrs. Bannerot began the removal of some of the machinery and tanks from the building, and declared her intention of taking away everything in the building except the walls, whereupon the present bill was filed and a preliminary injunction granted restraining the removal of the machinery and tanks in question.

Eighth. The defendants on the trial disclaimed any intention of removing the elevator. The machinery and appliances for making lubricating oil, including the engine and boiler and a pump connected with a well on the premises, are attached to the building in the usual way of attaching such appliances. The grease kettles, which are of considerable size, cannot be removed from the building without taking them apart or else removing the floor. The oil tanks on the first floor were built in the building and cannot be removed without taking them apart.

CONCLUSIONS OF LAW.

First. The fact that Alexander A. Bannerot carried on his oil business under the name of the Marine Oil Company and kept his books of that business under that name does not affect his relation to the building and the machinery and fixtures contained in it, the name "Marine Oil Company" as thus used being merely another name for himself. When he died, therefore, devising the property in question to his sons and wife in equal shares, the ordinary rule as to what are or are not removable fixtures, as between the personal representatives and the heirs or devisees of the deceased, applies.

Second. The general rule is that when the owner of

land in fee puts machinery and appliances upon it for the purpose of carrying on a business for which the building in which they are erected is adapted, and the whole constitutes a plant for the carrying on of a particular business, such articles are to be deemed part of the freehold and to pass to the vendee, devisee or heir of the party annexing them: Oves v. Oglesby, 7 Watts 106.

Third. If this be correct the tanks and machinery in question were part of the real estate of Alexander A. Bannerot at the time of his death, and not of his personal estate, and the conveyance by Margaret C. Bannerot of her one-third interest in the Beaver Avenue property conveyed to the plaintiffs these fixtures as part of the realty.

It appearing therefore that the articles the removal of which is the subject of this bill were part of the real estate of Alexander A. Bannerot at the time of his death, and not part of his personal property, we are of opinion that they now belong to the plaintiffs, and that the plaintiffs are entitled to an injunction as prayed for

It is therefore ordered that the injunction heretofore granted be made permanent, and that the defendants pay the costs.

*Error assigned* was decree awarding injunction.

*R. H. Jackson,* for appellants.

*Thomas P. Trimble,* with him *John N. Dunn, A. S. Moorhead,* and *Edward C. Chalfant,* for appellees, were not heard.

PER CURIAM, January 6, 1913:

The decree appealed from is affirmed at the cost of the appellants on the findings of fact and conclusions of law by Judge SHAFER.